# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instruction sheet.)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Guam Tumon Company, LLC et al | BTC 97 SP, LLC; Does 1-10 |
| | 03-00043 |

| | |
|---|---|
| COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Guam_ | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _New York_ |
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robert Kutz | |
| Law Ofc. of R. P. Kutz | **RECEIVED** |
| POB 7310, ASAN 96915 | DEC 12 2003 |
| ☎ 671-789-2500 | DISTRICT COURT OF GUAM HAGATNA, GUAM |

*(PLACE AN ☐ IN ONE BOX ONLY)* **BASIS OF JURISDICTION**

☒ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY)  ☐ 5 LOCAL QUESTION

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

SPECIFIC PERFORMANCE OF LAND SALE CONTRACT; DAMAGES FOR BREACH OF BROKER CONTRACT; IMPOSITION OF CONSTRUCTIVE TRUST

*(PLACE AN ☒ IN ONE BOX ONLY)* **NATURE OF SUIT**

## ACTIONS UNDER STATUTES

| CONTRACT | TORTS | CIVIL RIGHTS | FORFEITURE/PENALTY | OTHER STATUTES | |
|---|---|---|---|---|---|
| ☐ 110 INSURANCE | **PERSONAL INJURY** | ☐ 441 VOTING | ☐ 610 AGRICULTURE | ☐ 400 STATE REAPPORTIONMENT | ☐ 875 CUSTOMER CHALLENGE 12 USC 3410 |
| ☐ 120 MARINE | ☐ 310 AIRPLANE | ☐ 442 JOBS | ☐ 620 FOOD & DRUG | ☐ 410 ANTI-TRUST | |
| ☐ 130 MILLER ACT | ☐ 315 AIRPLANE PRODUCT LIABILITY | ☐ 443 ACCOMMODATIONS | ☐ 630 LIQUOR LAWS | ☐ 420 BANKRUPTCY | ☐ 891 AGRICULTURAL ACTS |
| ☐ 140 NEGOTIABLE INSTRUMENT | ☐ 320 ASSAULT, LIBEL & SLANDER | ☐ 444 WELFARE | ☐ 640 R.R. & TRUCK | ☐ 421 TRANSFER (915b) | ☐ 892 ECONOMIC STABILIZATION ACT |
| ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | ☐ 330 FEDERAL EMPLOYERS' LIABILITY | ☐ 440 OTHER CIVIL RIGHTS | ☐ 650 AIRLINE REGS. | ☐ 422 APPEAL (801) | ☐ 893 ENVIRONMENTAL MATTERS |
| ☐ 151 MEDICARE ACT | ☐ 340 MARINE | | ☐ 660 OCCUPATIONAL SAFETY/HEALTH | ☐ 430 BANKS AND BANKING | ☐ 894 ENERGY ALLOCATION ACT |
| ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS | ☐ 345 MARINE PRODUCT LIABILITY | | ☐ 690 OTHER | ☐ 450 COMMERCE ICC RATES, ETC. | ☐ 895 FREEDOM OF INFORMATION ACT |
| ☐ 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | ☐ 350 MOTOR VEHICLE | | **LABOR** | ☐ 460 DEPORTATION | ☐ 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE ACT |
| ☐ 160 STOCKHOLDERS SUITS | ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY | | ☐ 710 FAIR LABOR STANDARDS | ☐ 810 SELECTIVE SERVICE | |
| ☒ 190 OTHER CONTRACT | ☐ 360 OTHER PERSONAL INJURY | **PRISONER PETITIONS** | ☐ 720 LABOR/MGMT. RELATIONS | ☐ 850 SECURITIES COMMODITIES EXCHANGE | ☐ 950 CONSTITUTIONALITY OF STATE STATUES |
| ☐ 195 CONTRACT PRODUCT LIABILITY | ☐ 365 PERSONAL INJURY PRODUCT LIABILITY | ☐ 510 VACATE SENTENCE (2255) | ☐ 730 LABOR/MGMT. REPORTING & DISCLOSURE ACT | **SOCIAL SECURITY** | ☐ 970 NARA, TITLE II |
| | | ☐ 520 PAROLE COMMISSION REVIEW | ☐ 740 RAILWAY LABOR ACT | ☐ 861 HIA (1395ff) | ☐ 890 OTHER STATUTORY ACTIONS |
| **REAL PROPERTY** | **PERSONAL PROPERTY** | | ☐ 790 OTHER LABOR LITIGATION | ☐ 862 BLACK LUNG (923) | |
| | ☐ 370 OTHER FRAUD | ☐ 530 HABEAS CORPUS | ☐ 791 EMPLOYEE RETIREMENT INCOME SECURITY ACT | ☐ 863 DIWC (405(g)) | |
| ☐ 210 CONDEMNATION | ☐ 371 TRUTH IN LENDING | | | ☐ 863 DIWW (405(g)) | |
| ☐ 220 FORECLOSURE | ☐ 380 OTHER PERSONAL PROPERTY DAMAGE | ☐ 540 MANDAMUS & OTHER | | ☐ 864 SSID Title XVI | |
| ☐ 230 RENT LEASE & EJECTMENT | | | | ☐ 865 RSI (405 (g)) | |
| ☐ 240 TORTS TO LAND | ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY | ☐ 550 CIVIL RIGHTS | **PROPERTY RIGHTS** | **TAX SUITS** | |
| ☐ 245 TORT PRODUCT LIABILITY | | | ☐ 820 COPYRIGHT | ☐ 870 TAXES | |
| ☒ 290 ALL OTHER REAL PROPERTY | | | ☐ 830 PATENT | ☐ 871 IRS-THIRD PARTY | |
| | | | ☐ 840 TRADEMARK | | |

**UNITED STATES DISTRICT COURT**     *(Continued on Reverse Side)*

**CIVIL COVER SHEET (Reverse Side)**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instruction sheet.)

**INSTRUCTIONS:** After completing the front side of form JS 44B, complete the information requested below.

| *(PLACE AN ⊠ IN ONE BOX ONLY)* ORIGIN | LOCAL QUESTION |
|---|---|
| ☒1 ORIGINAL PROCEEDING ☐2 REMOVED FROM STATE COURT ☐3 REMANDED FROM APPELLATE COURT ☐4 REINSTATED OR REOPENED | ☐**910** DOMESTIC RELATIONS ☐**930** PROBATE |
| ☐5 TRANSFERRED FROM (SPECIFY DIST.) ☐6 MULTIDISTRICT LITIGATION ☐7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGMENT | ☐**920** INSANITY ☐**940** SUBSTITUTE TRUSTEE ☐**990** OTHER |

| *Check/Fill in if demanded in complaint* | | *Check YES only if demanded in complaint:* | | |
|---|---|---|---|---|
| ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ *$1M; 100K* | OTHER *SPEC. PERF* | **JURY DEMAND** ☐ YES ☐ NO |

**REMARKS**

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| *12.11.03* | |

COMMENTS (Use if additional space is required):

ROBERT P. KUTZ, ESQ.
**LAW OFFICE OF ROBERT P. KUTZ**
PO Box 7310, Agat, GU 96915
Tel: (671) 789-2500
Fax: (671) 789-2503
Email: rpklaw@ite.net

FILED
DISTRICT COURT OF GUAM
DEC 12 2003
MARY L. M. MORAN
CLERK OF COURT

**IN THE DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| GUAM TUMON COMPANY, LLC,<br>a Guam limited liability company,<br>JAE SEUNG PARK, an individual,<br>CENTRAL MILLS SUPPLY, LTD.,<br>a Korean Corporation, MICHAEL LEE,<br>an individual dba Global Realty,<br><br>Plaintiffs,<br><br>vs.<br><br>BTC975P, LLC, a Delaware limited liability<br>company, DOES 1-10, real parties in interest,<br><br>Defendants. | CIVIL CASE NO. **03-00043**<br><br>**COMPLAINT FOR SPECIFIC<br>PERFORMANCE; DAMAGES;<br>IMPOSITION OF CONSTRUCTIVE<br>TRUST.** |

COMES NOW the undersigned, Robert P. Kutz, Law Office of Robert P. Kutz, counsel for Plaintiffs herein, and does hereby aver and allege:

**Parties and Jurisdiction**

1.     Plaintiff Jae Seung Park (hereafter "PARK") is an individual resident in Guam, and a Managing Member of Plaintiff Guam Tumon Company, LLC, a Guam limited liability company.

2.     Plaintiff Central Mills Supply Company, Ltd., is a corporation duly organized and operated under the laws of Korea, and is a Member of Plaintiff Guam Tumon Company, LLC.

ORIGINAL

-1-

3.     Plaintiff Michael S. Lee (hereafter "LEE") is an individual resident of Guam, licensed

as a Guam real estate broker, dba Global Realty Guam.

4.     Defendant BTC97SP (hereafter "BTC") is a Delaware limited liability company

registered as a foreign LLC to do business in Guam, whose principal office is at 1251 Avenue of the

Americas, New York, New York.

5.     Defendants Doe 1-10 are persons or entities, the identities of which are presently

unknown to Plaintiffs herein, which persons or entities claim a legal or equitable interest in the real

property which forms the subject matter of this action.   As soon as the proper identities of these

persons or entities becomes known, Plaintiffs will amend its complaint to name those persons.

6.     The real property which forms the subject matter of this action is located in Guam, and

has a value in excess of $3,000,000. [Legal Description attached as Exhibit A]

7.     The contract which forms the subject matter of Plaintiff Michael S. Lee's complaint

herein was entered into and to be performed in Guam.   The amount in controversy is in excess of

$75,000.

8.     Based upon the foregoing, this Court has jurisdiction of the matter pursuant to the

provisions of 28 USC 1332, as a diversity proceeding.

**Factual Summary**

9.     In or about July 4, 2003, Plaintiff Michael S. Lee (hereafter "LEE") contacted Bruce

Morrison (hereafter "MORRISON"), Managing Director of Defendant BTC97 SP advising

MORRISON that LEE's company, Global Realty, had obtained a client who was interested in

purchasing the subject real property, a multi-unit apartment complex located in Upper Tumon, Guam,

commonly known as the Tumon Village Apartments.   Following this initial contact, LEE commenced

negotiations for purchase of the Tumon Village property on behalf of LEE's clients, Plaintiffs Jae S.

PARK and PARK's business associate, Kyu Young Cho, Chairman and Chief Executive Officer of

Plaintiff Central Mills Supply Company, Ltd. From the beginning of negotiations, LEE represented to

MORRISON that LEE's clients were interested in and willing to purchase the property in "as is"

condition.

10. As a result of this initial negotiation, Defendant BTC entered into a non-exclusive

listing agreement with LEE for the sale of the property to LEE's clients.

11. Between July and October, 2003, negotiations for purchase of the property by LEE's

clients were conducted in part by Plaintiff LEE, in part by counsel for Plaintiff PARK, acting at the

direction of Plaintiff PARK, and in part by Plaintiff PARK himself. As a result of these negotiations, on

November 4, 2003 (Guam date), Park's counsel wrote MORRISON and extended an all-cash

purchase offer for the property in the amount of $3,300,000, payable in lump sum within 15 business

days of acceptance of the offer. The offer was extended for the property in "as is, where is" condition,

without warranty of any kind except warranty and delivery of clear, insurable title. As part of the

closing documentation, the sellers were to provide appropriate financial records, together with a copy

of the most recent appraisal for the property, the contents of which need not be disclosed prior to close

of escrow. [Copy attached as Exhibit B]

12. On November 4, 2003 (New York date), Director MORRISON responded by fax to

Plaintiff PARK that BTC had had internal meetings, and was prepared to counter-offer the property to

PARK at a price of $3,750,000, still on an "as is" basis. MORRISON further stated that if the price

was acceptable, PARK should respond no later than November 11, including any terms on which

acceptance was based. [Copy attached as Exhibit C]

13. On November 5, 2003 (Guam date), at PARK's request, Atty. Kurtz responded to

MORRISON's counter offer with a return counter offer, increasing the Buyers' proposed price to

-3-

$3,500.00, and including particular terms and conditions with respect to the issue of "clear, insurable title", as a condition of sale, and including by reference the other terms sent to MORRISON on November 4. [Copy attached as Exhibit D]

14. On November 7, 2003 (New York date), MORRISON again responded directly to PARK, refusing the $3,500,000 offer, but re-offering to sell for the amount of $3,700,000, which might be further modified, should broker LEE be willing to decrease his agreed 4% commission in order to expedite the proposed sale. [Copy attached as Exhibit E]

15. In fact, broker LEE did agree to reduce his commission from 4% of the sale amount to a flat fee of $100,000, pursuant to an amended non-exclusive listing agreement between BTC and LEE. [Copy attached as Exhibit F]

16. Having successfully negotiated a reduced commission with LEE, MORRISON and PARK again discussed the adjustment of the purchase price, arriving at a final sale price of $3,650,00, to be paid in all cash, with closing at 15 days following opening of escrow. By fax on November 19, 2003 (New York date), MORRISON confirmed this agreement with PARK. [Copy attached as Exhibit G]

17. On November 20, 2003 (Guam date), Plaintiff PARK again faxed MORRISON, confirming the irrevocable commitment of PARK and his associate, Kyu Young Cho, to purchase the property for a cash price of $3,650,000. By this letter, PARK reiterated that the terms of the purchase would be those set out in the letters exchanged between MORRISON and Atty. Kutz, so far as the condition of the property and documentation to be supplied was concerned. One new element was added by PARK in this correspondence, that being a request that a copy of the property's appraisal, prepared at the request of the sellers, be provided to the buyers during escrow so that it could in turn be presented to the Korean government as part of the process of obtaining Korean bank approval for

transmission of a substantial portion of the balance of the purchase price from Korea to the Guam

escrow holder. [Copy attached as Exhibit H]

18. On November 25, 2003, MORRISON, by fax to Plaintiff Cho confirmed that he

(MORRISON) was sending a copy of the appraisal to the seller's representative in Korea, for further

delivery to Plaintiff Cho. [Copy attached as Exhibit I]

19. On November 23, counsel for Plaintiffs received a 28-page draft document entitled

"Agreement of Sale", originally prepared by seller's New York counsel, Andrew Weiner of Morrison

and Forester, and thereafter amended by Sellers' Guam counsel, Duncan McCully of McCully and

Beggs.

20. As is often the case when attorneys are zealous in protecting their clients and providing

for all possible contingencies, the draft agreement contained a substantial number of terms and

conditions not expressed in the letters exchanged between Buyers and Sellers, which letters formed the

basis of this transaction. Among additional terms and conditions included were those providing for the

potential transfer of a mortgagee's interest in a portion of the property, rather than fee simple transfer,

waiver of applicable statutes of limitations, cross proposals for deposit amounts and opening and

closing escrow dates, and possible extensions of such dates to obtain government approval. Of these

various cross-proposals, some were agreed between counsel for the parties, on behalf of their

principals, while some remained unresolved as of December 3, 2003. Among those agreed was the

substitution of a new Guam limited liability company, the Guam Tumon Company (hereafter

"COMPANY"), as nominee for the Buyers. The COMPANY was duly formed, and is designated a

Plaintiff in this action, as its interest appears.

21. On December 1, 2003 (New York date), as part of the ongoing exchange of email

communications regarding proposed additional terms or conditions to the purchase agreement, Sellers'

New York attorney repeatedly referred to the "accepted offer", and clearly acknowledged that the

purchasers' request for changes to proposed escrow dates and to permit disclosure of the appraisal to

Korean government officials, would constitute material changes in the existing

contract:

"RESPONSE: We are confused by the statement about "a very short escrow". If the transaction were the 15 day close (i.e., 12/15/03) specified in the offer by your client which was accepted, a small deposit would be understandable (although we would want something in excess of $75,000). However, you are now changing the accepted offer materially: The deal is contingent on Korean governmental approval, with an uncertain time frame. The issue of the amount of the deposit cannot be resolved until these other issues are resolved."

"As to governmental approval, it is not clear whether you are asking for more time to obtain the approval or you are, in addition, saying that you can terminate the contract and obtain a return of the deposit if approval is not obtained. In either event, this is a material change in the deal. Before checking to see whether the seller is prepared to accept these new terms (and without suggesting that it is so prepared), it would be useful to know exactly what you are now proposing:

- Is there an outside date by which, in all events, the governmental consent must be obtained for the transaction may be terminated by seller?

- Are we correct that, if governmental consent is not obtained by the outside date, seller can retain the deposit? Or are you suggesting that the deposit would, in that event, be returned to the purchaser?

- If a delay beyond 12/15/03 occurs, does this change your proposal about the amount of the deposit?

Please provide us with more information about the approval process." [Copy attached as Exhibit J]

22. On December 3, Atty. Weiner emailed Atty. Kutz, noting that the proposed changes to permit an extension of escrow time beyond the originally contemplated 15 days, in order to assure Korean government approval for fund transfer, constituted such material changes that: "Unless you can revert to your clients' original offer as to the closing date and the absence of third-party consents, my client will have to reconsider whether it is prepared to proceed with the sale of the

-6-

1     *property to your client.*" [Copy attached as Exhibit K]

2         23.    Following receipt of this email, buyers responded by email between counsel, and finally

3     by letter directly from PARK to MORRISON, on December 10, 2003 (Guam date), that the buyers

4     would no longer require the contingency of Korean government approval as a condition of close of

5     escrow, and that they were prepared to open escrow immediately, and close within 15 working days,

6     i.e., before the end of calendar 2003. [Copy attached as Exhibit L]

7         24.    Notwithstanding this confirmation of willingness to abide by the terms of the original

8     letter agreements, regardless of other proposed conditions and terms exchanged between the lawyers,

9     on December 9, 2003 (New York date), MORRISON by fax to PARK confirmed the intention of

10    BTC to discontinue negotiations, withdraw from the transaction, and elect to "pursue other

11    opportunities." [Copy attached as Exhibit M] This decision having been further confirmed in

12    conversation and email exchanged between counsel for sellers and buyers between December 9 and

13    December 11, 2003, without change of position by the sellers, this action follows.

14                  **First Cause of Action – Specific Performance**

15          **Plaintiffs Guam Tumon Company, Jae Seung Park, Central Mill Supply Company, Ltd.**

16         25.    Plaintiffs incorporate paragraphs 1-24 herein by reference as if the same were set forth

17    in full.

18         26.    As noted hereinabove, Plaintiff J.S. Park, on behalf of himself and his associate, Kyu

19    Young Cho, entered into a binding contract for the purchase and sale of the subject real property, the

20    terms and conditions of which sale were contained in the letters exchanged between Bruce

21    MORRISON, as agent for seller-Defendant BTC and the buyers. Taken together, these letters

22    constitute the lawful obligation for the seller to sell and the buyer to purchase the real property on the

23    following terms and conditions:

(a) Buyer to pay cash in the amount of $3,650,000;

(b) Purchase price to be paid within 15 days of opening of escrow;

(c) Seller to deliver the property as is, without warranty of any kind except that of clear, insurable title, as set forth in the letters exchanged between buyer and seller. The seller was further obligated to provide certain documents at or before close of escrow, including an appraisal of the property prepared for the use of the seller.

(d) Real estate commission of $100,000 to be paid by Seller to Plaintiff LEE.

27. Other proposed terms and conditions which were not agreed by the parties form no part of their contractual rights or obligations.

28. Plaintiffs are informed and believe, and thereon allege, that these Defendants have suffered, and could suffer, no harm by reason of any delay attributable to Plaintiffs in failing to open escrow prior to December 11, 2003, in that until non-judicial foreclosure sale of a portion of the property was held by counsel for Defendants on December 10, 2003, Defendants could not deliver clear, insurable title to all the property, as specifically mandated by the express terms of the parties' letter agreement.

29. As expressed in the communications between the parties from and after December 3, 2003, Plaintiffs have been prepared to modify or release any proposed additional conditions of sale or escrow, other than those set forth in the mutual agreement of the parties, expressed in their correspondence as of November 20, 2003.

30. At all times pertinent hereto, Plaintiffs have been ready, willing and able to perform their obligations pursuant to the agreement of the parties, i. e., payment of the sum of USD3,650,000 within 15 days of opening of escrow between the parties. Notwithstanding the expressed willingness and ability of Plaintiffs to perform, Defendants' letter of December 9, 2003 and subsequent

communications from counsel for Defendants clearly constitute an anticipatory breach of these Defendants' obligation to sell the property to Plaintiffs. Because of the unique nature of real property, unless specific performance of this contract of sale is ordered, these Plaintiffs will suffer irreparable harm, loss and damage.

## Second Cause of Action – Breach of Contract

### Plaintiffs Guam Tumon Company, Jae Seung Park, Central Mill Supply Company, Ltd.

31. Plaintiffs incorporate paragraphs 1-30 herein by reference as if the same were set forth in full.

32. Plaintiffs' actions, as set forth herein, consisting of their attempt to terminate the process of sale of the property, and to attempt to sell the property to other persons, identified as Defendants DOES 1-10 herein, constitute a breach of Defendants' contractual obligation to sell and transfer the property to Plaintiffs on the terms and conditions set forth in the writings exchanged between them. Such breach by Defendants entitles these Plaintiffs to damages equivalent to the loss of benefit of their bargain, in an amount in excess of $1,000,000, or as may otherwise be proven at trial.

## Third Cause of Action – Breach of Contract

### Plaintiff Michael S. Lee

33. Plaintiff incorporates paragraphs 1-32 herein by reference as if the same were set forth in full.

34. By virtue of the non-exclusive listing agreement between Plaintiff LEE and Defendant BTC, which agreement provides payment of compensation in the form of a commission to LEE upon sale of the property to Plaintiff PARK, Plaintiff LEE is an intended third-party beneficiary of the contract between Plaintiffs PARK, et al., and Defendant BTC.

35. By reason of these Defendants' breach of their contract to purchase and sell between

the Plaintiffs and Defendants, Defendant BTC has likewise anticipatorily breached its obligation to pay

compensation to Plaintiff LEE in the agreed amount of $100,000.

36.     By reason of these Defendants breach of the underlying contract, and anticipatory

breach of their commission agreement with Plaintiff LEE, Plaintiff LEE is damaged in the amount of

$100,000, or such other amount as may be proven as at time of trial.

## Imposed Constructive Trust – Defendants DOE 1-10

37.     Plaintiffs incorporate paragraphs 1-36 herein by reference as if the same were set forth

in full.

38.     Plaintiffs are informed and believe, and thereon allege, that as of the time of the filing of

this action, Defendant BTC has entered into negotiations for transfer and sale of the subject property to

persons or parties unknown, the identity of whom and the extent of which legal or equitable interest

such persons may claim in the subject property is not ascertained at the present time.

39.     To the extent that these Defendants seek to acquire any interest in the subject property

in derogation of the rights of Plaintiffs herein to purchase the property upon terms and conditions set

forth herein, Plaintiffs seek the remedy of imposition of a constructive trust upon any interest so

acquired by these Defendants, which interest was acquired, or is contemplated to be acquired, as a

result of negotiations conducted or concluded from and after November 20, 2003.

## Conclusion

40.     By reason of the foregoing, Plaintiffs pray for relief as follows:

(a)  That this Court issue its decree commanding specific performance of the transfer and sale

of the property at issue from Defendant sellers to Plaintiffs, on terms and conditions agreed

in writing between them; or

(b)  In the alternative, Plaintiffs be awarded damages in the amount equivalent to the potential

loss of benefit of their bargain, in the sum of $1,000,000, or such amount as may be proven

at time of trial;

(c) That Defendant BTC be ordered to pay compensation in the amount of $100,000 to

Plaintiff Michael LEE herein, as compensatory damages for Defendant's breach of the

listing agreement between Defendant BTC and Plaintiff LEE;

(d) That a constructive trust be imposed upon any legal or equitable interest in the subject

property acquired by any persons other than the Plaintiffs, such that those persons shall be

ordered and compelled to transfer such rights or interests in the subject property to

Plaintiffs herein;

(e) For Plaintiffs' attorney's fees and costs of suit; and

(f) For such other and further relief as may be just and proper.

Date:  December 12, 2003                    LAW OFFICE OF ROBERT P. KUTZ

                                            BY:

                                            ROBERT P. KUTZ

## Property Description

Parcel No. I. LOT NO. 5098, TAMUNING, GUAM, ESTATE NO. 20850, SUBURBAN, as said lot is marked and designated on Map Drawing No. 70-59-1 (LM#35FY71), dated February 23, 1971 and recorded on July 6, 1962 under Instrument No. 113776, in the Department of Land Management, Government of Guam.

Parcel No. II. LOT NO. 5100-1 TAMUNING, GUAM, ESTATE NO. 20850, SUBURBAN, as said lot is marked and designated on Map Drawing No. 70-59-1 (LM35FY71), dated February 23, 1971 and recorded on July 6, 1972 under Instrument No. 113776, in the Department of Land Management, Government of Guam.

Parcel No. III. LOT NO. 5090-REM-1, TAMUNING, GUAM, as said lot is marked and designated on the Map Drawing No. 14-73T013, (LM#24FY74) dated December 10, 1973 and recorded in the Department of Land Management, Government of Guam.

# LAW OFFICE OF ROBERT P. KUTZ
### P.O. BOX 7310
### AGAT, GUAM 96915
### TEL: (671) 789-2500 FAX 789-2503
### EMAIL: rpklaw@ite.net

November 5, 2003

Mr. Bruce Morrison
Deutsche Bank
DB Real Estate
1251 Avenue of the Americas, 9th Floor
New York, NY 10020

RE: Guam New Tumon Village Apartment Complex

Mr. Morrison:

Mr. Park has forwarded your November 5 fax to me for response.

Mr. Park and his associates are not willing to accept the counter-proposal set forth in your letter, but are prepared to increase their offer to a total of $3,500,000, payable on and subject to the same terms and conditions set forth in my own November 4th fax to you.

With respect to the matter of "clear, insurable title", as a condition of sale, I have been provided with a copy of Ownership and Encumbrance Report no. OER-98-3-14651A, issued by Pacific American Title Insurance Company. Title to the property remaining at close of escrow in the condition described in that report will deemed clear and insurable, for our purposes. I presume that you have a copy of that report – if not, it may be readily obtained either from me or broker Michael Lee.

Although as a licensed broker myself, I am well aware that the topic of commissions is regarded as sacrosanct, I am informed by Mr. Park that because of the singularly simple and uncomplicated nature of this proposed transaction, Mr. Lee would be willing to re-negotiate his commission arrangement with you. Assuming that to be the case, I strongly suggest that, if necessary, you consider doing likewise with respect to your principals so that this deal may be completed on terms satisfactory to all.

For simplicity of continuing these negotiations, Mr. Park and I request that you communicate your response directly to me, with copies to Mr. Park and to Mr. Lee. In that way, unnecessary time loss and duplication of effort may be avoided.

This counter-offer will remain open until 5:00pm, November 12, New York time, at which time it will terminate without further notice.

I look forward to your response as soon as possible.

Sincerely,

ROBERT P. KUTZ

cc:    J S Park

# BTC 97 SP, LLC

November 4, 2003

Mr. Jae Seung Park
P.O. Box 8801
Tamuning, Guam 96931

BY FACSIMILE

Dear Mr. Park:

We have had our internal meetings and are pleased to offer you the opportunity to purchase the New Tumon Village at a price of $3,750,000 on an "as is" basis. If this is acceptable to you, please respond no later than November 11, including any terms on which your acceptance is based. Assuming that the terms are agreeable to BTC 97, I will put our attorney in touch with your attorney and we will start preparing the appropriate documents.

I look forward to hearing from you.

Sincerely,

Bruce P. Morrison
Managing Director

cc: Michael Lee

BTC 97 SP, LLC
C/O DB REAL ESTATE, 1251 AVENUE OF THE AMERICAS, NYC01-2500 · NEW YORK, NY · 10020
PHONE: 646/324-1306 · FAX: 646-324-3083

# LAW OFFICE OF ROBERT P. KUTZ

P.O. BOX 7310
AGAT, GUAM 96915
TEL: (671) 789-2500 FAX (671) 789-2503
E M A I L :  r p k l a w @ i t e . n e t

November 5, 2003

Mr. Bruce Morrison
Deutsche Bank
DB Real Estate
1251 Avenue of the Americas, 9th Floor
New York, NY 10020

**VIA FACSIMILE 646-324-7934**

RE: Guam New Tumon Village Apartment Complex

Mr. Morrison:

Mr. Park has forwarded your November 5 fax to me for response.

Mr. Park and his associates are not willing to accept the counter-proposal set forth in your letter, but are prepared to increase their offer to a total of $3,500,000, payable on and subject to the same terms and conditions set forth in my own November 4th fax to you.

With respect to the matter of "clear, insurable title", as a condition of sale, I have been provided with a copy of Ownership and Encumbrance Report no. OER-98-3-1465IA, issued by Pacific American Title Insurance Company. Title to the property remaining at close of escrow in the condition described in that report will deemed clear and insurable, for our purposes. I presume that you have a copy of that report – if not, it may be readily obtained either from me or broker Michael Lee.

Although as a licensed broker myself, I am well aware that the topic of commissions is regarded as sacrosanct, I am informed by Mr. Park that because of the singularly simple and uncomplicated nature of this proposed transaction, Mr. Lee would be willing to re-negotiate his commission arrangement with you. Assuming that to be the case, I strongly suggest that, if necessary, you consider doing likewise with respect to your principals so that this deal may be completed on terms satisfactory to all.

For simplicity of continuing these negotiations, Mr. Park and I request that you communicate your response directly to me, with copies to Mr. Park and to Mr. Lee. In that way, unnecessary time loss and duplication of effort may be avoided.

This counter-offer will remain open until 5:00pm, November 12, New York time, at which time it will terminate without further notice.

I look forward to your response as soon as possible.

Sincerely,

ROBERT P. KUTZ

cc: J. S. Park

Case 1:03-cv-00043    Document 34    Filed 12/12/2003    Page 18 of 35
11/07/2003  03:41   6465243082   DB REAL ESTATE   PAGE  03/03

# BTC 97 SP, LLC

November 7, 2003

Mr. Jae Seung Park
P.O. Box 8801
Tamuning, Guam 96931

**BY FACSIMILE**

Dear Mr. Park:

Thank you for your counter-offer of $3,500,000 which was presented to me in a letter from your attorney, Mr. Robert Kutz, on November 5. While it is a step in the right direction, it is an offer that we just cannot accept. We would seriously consider $3,700,000, which might be further modified, depending on the results of the suggested re-negotiation with your broker, Mr. Michael Lee. If this price is acceptable to you, please respond no later than November 12, 5:00 PM, New York time.

However, before we could go to contract and closing, I must have additional information regarding the entity which will purchase the project, including the identity of any partners in the project, as well as the source of the funds from all parties that will be tendered in payment for the project.

I look forward to hearing from you.

Sincerely,

Bruce P. Morrison
Managing Director

cc:  Michael Lee
     Robert P. Kutz

BTC 97 SP, LLC
C/O DB REAL ESTATE, 1251 AVENUE OF THE AMERICAS, NYC07-3500 • NEW YORK, NY • 10020
PHONE: 646-524-3070 • FAX: 646-524-3082

# NON-EXCLUSIVE LISTING AGREEMENT

The undersigned Owner's representative hereby grants the undersigned Broker a Non-Exclusive Listing Agreement ("Agreement"), for a period commencing this date and terminating December 31, 2003, to sell the Tumon Village Apartments Project located at Upper Tumon, Island of Guam (the "Property") to ___Jae S. Park___.

Owner agrees to pay Broker as compensation for services rendered a fee of 4% — $100,000.00 (four percent) of the selling price if Broker procures an offer to purchase from ___Jae S. Park___ , on the terms acceptable to Owner during the term of this Agreement. Broker shall also be entitled to compensation if the Owner sells or transfers the property to ___Jae S. Park___ within ninety (90) days after the termination of this Agreement. Any compensation due Broker shall only be due and payable at the close of the escrow of a purchase offer accepted by Owner. No compensation shall be paid if an accepted purchase offer does not close, for any reason.

The Owner reserves the right to sell the Property during the term hereof, without incurring liability for any compensation to the Broker, to any purchaser other than ___Jae S. Park___. The Broker shall notify Owner of any and all offers for any reason. In the event that Owner shall sell the Property, it shall immediately notify the Broker in writing stating the name of the purchaser and the purchase price to be paid.

Broker is authorized to cooperate with other Brokers in the marketing and sale of the Property and may divide the above compensation with such other Brokers. Owner agrees to deliver escrow instructions irrevocably assigning Broker's compensation from Owner's proceeds at the close of escrow. Owner shall have the right to enter into non-exclusive listing agreements with other real estate brokers on such terms and conditions as it deems appropriate. Subject to Broker's right to compensation, Owner shall have the right to negotiate directly with ___Jae S. Park___ after the execution of this Agreement.

**BROKER:**

Name: Michael S. Lee / Broker

Address: Global Realty
P.O. Box 28375
G.M.F. Guam 96921

Telephone: (671) 637-3090/91
Fax: (671) 637-3119

By: _[signature]_

**OWNER:**

Name: BTC 97 SP, LLC, a Delaware limited liability company

Date: October 21, 2003

Address: c/o DB Real Estate
1251 Avenue of the Americas
New York, NY 10020

Telephone: 646 - 324 - 3070
Fax: 646 - 324 - 7934

By: _[signature]_



BTC 97 SP, LLC

November 19, 2003

Mr. Jae Seung Park
P.O. Box 8801
Tamuning, Guam 96931

BY FACSIMILE

Dear Mr. Park:

It was good to talk with you last night.  Confirming our conversation, our final price is $3,650,000.  It is my understanding that you and Mr. Cho will pay all cash and will close within 15 days.  If that is not the case, we will need to reconsider our final price.  As we discussed, BTC 97 will be responsible to pay the commission of Mr. Michael Lee.  As to title, your attorney, Mr. Robert P. Kutz, stated in his letter of November 5, 2003, that as long as the property is in the same condition as described in Pacific American Title Insurance Company's Ownership and Encumbrance Report No. 08 2014651A, then that will satisfy your requirement for "clear and insurable" title.  Since I have not seen that report, please have Mr. Kutz or Mr. Lee courier me a copy.

I mentioned to you that I thought Mr. Steven Cha of our Korea Real Estate Group would be in contact with Mr. Cho on Wednesday.  I regret to report that the project that he's been working on went an additional day.  Therefore, he will be contacting Mr. Cho on Thursday.

Sincerely,

Bruce P. Morrison
Managing Director

cc:  Mr. Kyu Young Cho
     Mr. Michael Lee
     Mr. Steven Cha

BTC 97 SP, LLC
C/O DB REAL ESTATE, 1251 AVENUE OF THE AMERICAS, NYC01-2506 · NEW YORK, NY · 10020

# JAE SEUNG PARK

P.O. BOX 8801
TAMUNING, GUAM 96931
TEL: (671)646-8082/5248*FAX(671)646-4388

November 20, 2003

Attn: Mr. Bruce P. Morrison
Managing Director

Subject: The New Tumon Village Apartment Complex

Dear Mr. Morrison

This is to confirm my receipt of your faxed letter dated November 19, 2003, and the irrevocable commitment of myself and my associate, Kyu Young Cho, to purchase the Tumon Village Apartment property for a cash price of $3,650,000.

The terms of the purchase will be those set out in the letters exchanged between yourself and my attorney, Robert Kutz, so far as the condition of the property, documentation to be supplied and insurable title are concerned. Mr. Kutz told me that he has spoken to your attorney, Andrew Weiner, regarding preparation of sale documents, confirmation of title status, and similar matters.

Our agreement to purchase the property is, however, subject to one change from our previous proposals. In Mr. Kutz' correspondence with you, he indicated that a copy of the most recent appraisal of the property was to be provided to the purchasers at close of escrow. Please be advised that the appraisal copy must be provided to me, or either Mr. Cho or Atty. Kutz prior to close of escrow, so that it can be forwarded to our colleagues in Korea and incorporated by them in the financing arrangements to be made there.

We understand and agree that neither the purchase price nor the terms of sale are dependent upon any statements or conclusions to be found in the appraisal, and that it is quite possible that the appraised value may be less than the agreed price of $3,650,000.

For purposes of ultimate completion of the purchase, it is anticipated that a new entity will be formed, to be called Guam Tumon Investment Company, a Guam limited liability company. Pending formation of that entity, however, sale documents should be prepared identifying the purchasers as Mr. Cho and myself, or our nominees. I have directed Mr. Kutz to work with your attorney to prepare and complete the sale documentation.

Because of the Thanksgiving holiday, we propose an escrow closing date of December 15, 2003, by which date funds will be deposited in escrow in the amount of

the entire purchase price. At this time, it is anticipated that some funds will be transferred from accounts in the United States, while other funding will be provided from Korea. The particular details of the funding arrangements will be included in escrow instructions to be prepared by our attorneys.

I look forward to your response and acknowledgement of this letter.

Sincerely,

Jae Seung Park

# B'G 97 SP, LLC

November 25, 2003

Mr. Kyu Young Cho
Chairman
Jeoungang Construction Co., Ltd.
# 172-2, Yeomri-Dong, Mapo-Ku
Seoul, Korea

**BY FACSIMILE**

Dear Mr. Cho:

Thank you for interrupting your meeting last week to talk with my colleague Steven Cha. The information you gave him and the information we have developed on our own is very impressive. You had mentioned, in your letter of November 21, that you have prepared certain information regarding your identity and financial status. While you may have given it all to Steven over the phone, I would appreciate it if you would be kind enough to fax it to me [1-646-324-7934] as well.

In order to assist you in your application to the Korean Government and your bank, I am sending a copy of the Tumon Village appraisal to Mr. Steven Cha so that, once the Purchase and Sale Agreement has been signed, he can immediately deliver the appraisal to you. This should save two or three days in what is going to be a very tight schedule.

I look forward to working with you and Mr. Park in consummating our Tumon Village transaction.

Sincerely,

Bruce P. Morrison
Managing Director

cc:  Mr. Jae Seung Park
     Mr. Steven Cha

B'G 97 SP, LLC
C/O DB REAL ESTATE, 1251 AVENUE OF THE AMERICAS, NYC07-2500 • NEW YORK, NY • 10020
PHONE: 646-324-7070 • FAX: 646-324-7934

1

RESPONSE FROM MOFO 12/1/03

COMMENTS IN ALL CAPS

**LAW OFFICE OF ROBERT P. KUTZ**
957 CROSS ISLAND ROAD
SANTA RITA, GUAM 96915
TEL: (671) 565-1800 FAX: (671) 565-1803
EMAIL: rpklaw@ite.net

December 2, 2003

**MEMO via EMAIL**

TO: Andrew Weiner

FR: Robert P. Kutz

RE: Tumon Village Purchase Agreement

Andy:

I received the amended version of the Sale Agreement, as marked up by Duncan McCully, and have no objection to any of the changes he has made.

As we discussed, however, my clients and I have some objections and concerns with respect to the rest of the your original draft, which matters I will address here. For convenience, these issues are noted below in the order they appear in your draft, without regard for the importance of the particular issue.

1. Preamble – Purchaser will be Guam Tumon Company, LLC, a Guam limited liability company, whose address is #190 Chalan San Antonio, Tamuning, GU 96931.

RESPONSE: OK.

2. Article 1 (v) – "Existing Secured Loans" are supposedly identified on Exhibit "B", which has not been provided to me. Please identify those loans, including the pertinent details. However, unless I am told otherwise, I am presuming that the loans referred to are those which affect the "foreclosure parcel", Lot No. 5090-REM-1, as shown on Pacific American's O&E Report No. OER-03-8-4418, dated October 13, 2003. For whatever reason, I had not been provided with a copy of that report until November 20, and was unaware of the existence of the foreclosure parcel. Assuming that these are the only loans referred to, they will be of

ny-543781

course be extinguished at the time of the foreclosure sale, now set for December 10.

**RESPONSE: AGREED.**

3.      Article 1(aa) – "Intangible Personal Property", refers to Seller's right to pursue, sell and retain insurance proceeds under existing or former insurance policies, thus implying that such claims are now pending. The nature and extent of these claims had not been previously disclosed to my clients, and has formed no part of the bargaining with respect to the property. While my clients are not asserting a right to any of these proceeds, since the property is being purchased in "as is" condition, we are concerned that the existence of substantial insurance claims may affect the insurability of the property, or premiums charged for it, once the property changes hands. Naturally, we are concerned to avoid a lapse in insurance, and would like to confirm whether or not the existing carrier will renew its policy after close of escrow, or whether a new carrier must be sought. Accordingly, I would appreciate it if you provide this information as soon as possible.

**RESPONSE: INSURANCE CLAIM WAS RESOLVED AND PAID LAST WEEK. NO REMAINING ISSUES WITH IT.**

**RESPONSE: SELLER'S INSURANCE IS NOT ASSIGNABLE, AND SELLER IS NOT PROPOSING TO ASSIGN IT (IT CANNOT DO SO AS OF RIGHT). IN AN "AS-IS" DEAL, THE PURCHASER HAS THE RESPONSIBILITY TO OBTAIN ITS OWN INSURANCE, AND IT IS NOT A CONDITION PRECEDENT TO CLOSING THAT THE INSURANCE BE OBTAINED. THIS IS SUCH AN "AS-IS" DEAL. HOWEVER, AS AN ACCOMMODATION, BRUCE MORRISON IS TRYING TO PROVIDE YOUR CLIENT AN INTRODUCTION TO THE EXISTING INSURER, SO THAT YOU CAN ASK WHETHER THEY WILL PROVIDE YOUR CLIENT WITH INSURANCE. DOES THIS RESOLVE THE ISSUE?**

4.      Article 1(pp) – "Surveyor", which is left blank on your draft, is unclear. If it refers to the firm which produced the 1974 as-built topo survey which has been provided to my clients, that firm is no longer in business, and an updated survey must be provided by the Seller prior to close of escrow. Among other things, the Hotsun and Associates drawing does not clearly delineate the limits of the foreclosure parcel, and, of course, makes no account of the encroachment mentioned in the appraisal report. For all we know, there may be other encroachments. If, on the other hand, a more recent survey is available, upon which the Captain Company based their appraisal notes, we would like to be provided a copy of that survey as soon as possible. In this context, as we discussed, it appears that Captain has

improperly labeled the adjacent property, but these matters need to be confirmed.

RESPONSE: SELLER IS NOT PROPOSING TO OBTAIN A NEW OR UPDATED SURVEY. WHATEVER IS SHOWN ON THE MOST RECENT SURVEY SHOULD BE SIGNED OFF ON BY THE PURCHASER NOW.

MCCULLY & BEGGS: WHAT IS THE MOST RECENT SURVEY?

5.    §2.2.1 "Deposit" – My clients are unwilling to provide a 10% liquidated damages deposit for this transaction. Considering that the property is sold "as is", without warranty, for all cash, and in contemplation of a very short escrow, such a figure is unreasonable. Recognizing that a good-faith deposit is, of course, appropriate, my clients are willing to deposit the sum of $75,000, representing slightly over 2% of the purchase price.

RESPONSE: WE ARE CONFUSED BY THE STATEMENT ABOUT "A VERY SHORT ESCROW". IF THE TRANSACTION WERE THE 15 DAY CLOSE (i.e., 12/15/03) SPECIFIED IN THE OFFER BY YOUR CLIENT WHICH WAS ACCEPTED, A SMALL DEPOSIT WOULD BE UNDERSTANDABLE (ALTHOUGH WE WOULD WANT SOMETHING IN EXCESS OF $75,000). HOWEVER, YOU ARE NOW CHANGING THE ACCEPTED OFFER MATERIALLY. THE DEAL IS CONTINGENT ON KOREAN GOVERNMENTAL APPROVAL, WITH AN UNCERTAIN TIME FRAME. THE ISSUE OF THE AMOUNT OF THE DEPOSIT CANNOT BE RESOLVED UNTIL THESE OTHER ISSUES ARE RESOLVED.

6.    §2.2.3, Remaining payment amount adjusted to reflect the reduced deposit amount.

RESPONSE: SAME ISSUE.

7.    §4.2.2 Language of this section implies that a tenant lien may exist. If so, please provide the appropriate information with respect to the nature and amount of these liens. Until that information is provided, my clients cannot agree with the provisions of this paragraph.

RESPONSE: THERE IS NO TENANT LIEN SHOWN ON THE CURRENT TITLE REPORT, AND NO PARTICULAR REASON TO SUSPECT THAT ONE EXISTS. WE ARE PREPARED TO REMOVE THE REFERENCES TO TENANT LIENS.

8.    §4.3 "Survey" – See remarks above.

RESPONSE: SAME AS ABOVE.

9.  §4.4 While my clients do not object to purchasing the property as outlined subject to any actual or existing violations, please provide notice of any such violations, the nature of them, and the status of any remediation measures made to remove the violation.

RESPONSE: THIS IS AN "AS-IS" TRANSACTION, WITHOUT REPRESENTATIONS. WE ARE NOT PROPOSING, AND HOPE THAT YOU ARE NOT ASKING, FOR SELLER TO REPRESENT THE STATUS OF VIOLATIONS. BRUCE MORRISON HAS ASKED THE PROJECT MANAGER ABOUT THIS, AND WILL GIVE YOU HIS RESPONSE SO LONG AS IT IS CLEAR THAT THERE IS NO LIABILITY WHATSOEVER IF THIS INFORMATION IS NOT CORRECT OR COMPLETE.

10.  §4.6 The existence of the "Foreclosure Parcel" may create some difficulty. It has, of course, been the intention of my clients to purchase all of the Tumon Village property under the ownership or control of your clients, including the foreclosure property, of which I have recently become aware. On the other hand, in my letter to Bruce Morrison dated November 5, I specifically provide that my clients will accept clear, insurable title to the property as subject only to encumbrances as set forth in Pacific Title's Report OER-98-3-1465IA, now reissued as of October 13, 2003. The encumbrances on the foreclosure property, however, are not set out in that title report, but are contained in a separate report, neither reviewed or contemplated when I sent my November 5 letter to Bruce.

I have talked with my clients, and have just spoken with Duncan McCully as well. From what we can tell, the original owners have no actual interest in the property, and have not responded to any of the foreclosure notices. No one else has expressed interest in it either. Given all that, we should reasonably expect that the sale will take place on December 10 as scheduled, and the transfer will be completed as contemplated. If, however, it does not and the sale is incomplete, my clients require that sufficient funds be retained in the escrow, chargeable against the Seller's account, to pay attorney's fees and costs associated with completing the foreclosure. We also understand that it is possible the title company will ensure around the right of redemption, and if so, that should take care of that problem. If not, that issue must be addressed.

RESPONSE: IF THE FORECLOSURE IS NOT COMPLETED BY CLOSING, SELLER WOULD PROPOSE TO ESCROW $50,000 FOR ATTORNEY'S FEES AND COSTS ASSOCIATED WITH COMPLETING THE FORECLOSURE.

IF THE FORECLOSURE IS COMPLETED BY CLOSING, THE REDEMPTION PAYMENT WOULD FAR EXCEED THE VALUE OF

THE PROPERTY AFFECTED AND WOULD BELONG TO YOUR CLIENT, WHO WOULD EXPERIENCE A WINDFALL. THIS CALCULATION ALSO MAKES IT CLEAR THAT THE PRICE FOR REDEMPTION WILL BE PROHIBITIVE. AS A RESULT, WE WOULD NOT EXPECT A BUYER TO CARE ABOUT A TECHNICAL RESERVATION FOR REDEMPTION RIGHTS IN THE TITLE POLICY.

MCCULLY & BEGGS:    WHAT IS THE ANTICIPATED BID THAT THE MORTGAGEE WOULD MAKE AT THE FORECLOSURE SALE? HAVE YOU CHECKED WITH THE TITLE COMPANY AS TO WHETHER THEY WILL INSURE OVER THE RIGHT OF REDEMPTION?

11.    §4.7 – I am in receipt of a copy of a letter from Bruce to Mr. Cho, regarding release of the appraisal to Mr. Cho for purposes of obtaining government approval for transmittal of the funds. My clients agree that this is a workable method of handling this disclosure, however, a copy should be faxed or mailed to this office at the same time. If McCully & Beggs have a copy, they can provide it directly to me. For the record, I was not accurate when I told you that the appraisal was required to obtain financing for a portion of the purchase price – instead, as you probably now know, Korean government approval must be obtained to release funds in this amount for overseas transmission, regardless of the source. This requirement for government approval will, however, have to become a condition of close of escrow, such that escrow shall be extended for a reasonable period of time in order to receive the necessary permissions.

RESPONSE: WE ARE NOW CONFUSED AS TO WHY DISCLOSURE OF THE APPRAISAL IS NEEDED FOR KOREAN GOVERNMENT APPROVAL AND, IF SO, WHY ANYONE OTHER THAN THE KOREAN GOVERNMENT NEEDS TO SEE THE APPRAISAL. BRUCE MORRISON CONTINUES TO QUESTION THE NEED FOR ANYONE IN GUAM TO SEE THE APPRAISAL.

IN ADDITION, THE EQUITIES FOR SHARING THE APPRAISAL CHANGE WHEN THE DEPOSIT IS REDUCED, THE TIME TO CLOSE IS EXTENDED AND THE CERTAINTY OF CLOSING IS BROUGHT INTO QUESTION.

WE NEED TO DISCUSS THIS FURTHER.

AS TO GOVERNMENTAL APPROVAL, IT IS NOT CLEAR WHETHER YOU ARE ASKING FOR MORE TIME TO OBTAIN THE APPROVAL OR YOU ARE, IN ADDITION, SAYING THAT YOU CAN TERMINATE THE CONTRACT AND OBTAIN A RETURN OF THE DEPOSIT IF APPROVAL IS NOT OBTAINED. IN EITHER EVENT, THIS IS A MATERIAL CHANGE IN THE DEAL. BEFORE CHECKING TO SEE WHETHER THE SELLER IS PREPARED TO ACCEPT THESE

RESPONSE: OK.

13. §5.6 "As Is" Section (vii), is garbled on my received copy. The word "Forth" included in McCully's amendment is misspelled as "Froth".

SELLER DOES NOT REQUIRE APPROVAL OF OR ITS PRESENCE AT MEETINGS WITH GOVERNMENTAL AGENCIES IN KOREA OR GUAM. IT WILL MAKE THE PROJECT MANAGER AVAILABLE FOR QUESTIONING. IT DOES NOT WANT TENANTS OR EMPLOYEES BOTHERED, AND SEES NO NEED FOR THE PURCHASER TO QUESTION THEM PRIOR TO CLOSING.

RESPONSE: THE C.A. WOULD NOT SURVIVE CLOSING. THE C.A. WOULD BE APPLICABLE UNTIL THE CLOSING OCCURS, NOT WHEN THE ESCROW IS OPENED. IF DISCLOSURES TO KOREAN GOVERNMENTAL OFFICIALS ARE REQUIRED IN ORDER TO OBTAIN ITS APPROVAL, THAT CAN BE EXPRESSLY APPROVED BY SELLER, SO THE C.A. WOULD NOT APPLY TO THOSE DISCLOSURES.

manner as any other confidential information, pursuant to terms of the previously-executed confidentiality agreement.

obtained from those tenants or employees should be treated in the same proper and necessary, however, it may be provided that information token, contact with the tenants and employees during the escrow period is or any other investment, simply would not be acceptable. By the same representative in confidential communications in Korea, with respect to this section is unworkable, once escrow has opened. Inclusion of a Seller's the C.A. provisions apply only prior to close of escrow. The rest of the

12. §5.5 "Confidentiality" – This document should be amended to provide that

APPROVAL PROCESS.
• PLEASE PROVIDE US WITH MORE INFORMATION ABOUT THE
PROPOSAL ABOUT THE AMOUNT OF THE DEPOSIT?
• IF A DELAY BEYOND 12/15/03 OCCURS, DOES THIS CHANGE YOUR
THAT EVENT, BE RETURNED TO THE PURCHASER?
DEPOSIT? OR ARE YOU SUGGESTING THAT THE DEPOSIT WOULD, IN
OBTAINED BY THE OUTSIDE DATE, SELLER CAN RETAIN THE
• ARE WE CORRECT THAT, IF GOVERNMENTAL CONSENT IS NOT
TRANSACTION MAY BE TERMINATED BY SELLER?
GOVERNMENTAL CONSENT MUST BE OBTAINED OR THE
• IS THERE AN OUTSIDE DATE BY WHICH, IN ALL EVENTS, THE

WOULD BE USEFUL TO KNOW EXACTLY WHAT YOU ARE NOW PROPOSING.
NEW TERMS (AND WITHOUT SUGGESTING THAT IT IS SO PREPARED), IT

14. §6.1 – Although the buyers are willing to proceed as rapidly as may be reasonably possible, under the circumstances of foreclosure of the one parcel of property and the necessity to obtain Korean government permission for transmission of funds, the buyers are unwilling to commit to a specific closing date sooner than thirty days after the appraisal has been supplied to Mr. Cho in Korea and forwarded to the appropriate banking and governmental agencies. In any event, should close of escrow be delayed beyond thirty days by reason of the government's inability or refusal to act, and without any fault of my clients, escrow instructions must provide that escrow can remain open for a reasonable time to permit accomplishment of this purpose.

RESPONSE: SEE THE COMMENTS ABOVE.

15. §7.1 – My clients are unwilling to waive the benefit of statutes of limitation with respect to this transaction, nor are they willing to set a liability limit, either high or low. In Guam, the SL for actions arising out of a contract in writing is five years from the date on which the Plaintiff knew, or should have known, of the conduct giving rise to the claim. Nice try, though.

RESPONSE: TO BE DISCUSSED. WE SHOULD BE ABLE TO WORK SOMETHING OUT.

16. §7.2.1 – As noted earlier, it is anticipated that the buyer will be a Guam limited liability company, presently in the process of formation.

RESPONSE: OK.

17. §9.2 – Adjustment of post-closing collected rents (proration), and payment of any allocable amounts to either party will be made within thirty days of close of the parties' fiscal year. Although my clients are willing to report under penalty of perjury to the Sellers on a reasonable basis with respect to the status of uncollected rents, and efforts made to collect them, my clients will not agree to inspection of their books, nor will they be subject to the Seller's veto power with respect to waiver or settlement of any claims for past-due rent. Sellers will have to accept that buyers will proceed in good faith to deal with such accounts on a commercially reasonable basis, including commencement or abandonment of legal proceedings with respect to them.

RESPONSE: WE DO NOT AGREE TO YOUR PROPOSAL. HOWEVER, TO TRY A DIFFERENT APPROACH, WE MAKE THE FOLLOWING PROPOSAL. THE PURCHASER WILL ACQUIRE ALL RENT ARREARAGES WHICH ARE 60 DAYS OR LESS OVERDUE AT PAR, AND WILL BE ASSIGNED WITHOUT COST ALL RENT ARREARAGES WHICH ARE MORE THAN 60 DAYS OVERDUE. THEN

Case 1:03-cv-00043    Document 1-2    Filed 12/12/2003    Page 30 of 33

**THERE WILL BE NO NEED FOR POST-CLOSING ADJUSTMENTS. BRUCE MORRISON IS OBTAINING A LISTING OF CURRENT ARREARAGES.**

18. §10.1 – In the event of casualty damage to the property prior to close of escrow, where damage is $500,000 or less, buyer will take the property as is, plus insurance proceeds if any, or, if no insurance covers the loss, the price will be abated to reflect the reasonably estimated amount of the loss.

RESPONSE: *OK FOR CASUALTY WHICH OCCURS AFTER THE CONTRACT IS SIGNED.*

19. §11.1(b) – Any modification of the existing leases, or new leases made, shall not be at a material variance from the existing terms of such leases, without the consent of the buyer.

RESPONSE: WE CAN WORK SOMETHING LIKE THIS OUT.

20. §13.20 "Business Day" – What are the letters (x), (y), (z) doing in here?

RESPONSE: A DRAFTING CONVENTION, SEPARATING THREE SEPARATE ALTERNATIVES. WHAT WOULD YOU LIKE TO USE?

21. §13.21.4 Any interest earned on the purchase price, or any part thereof, held in escrow shall be divided equally between the parties.

RESPONSE: OK.

22. §13.9 – Notices to buyer should be sent to Guam Tumon Company, C/O Jae S. Park, Fax No. 671-646-4388. My office fax is incorrect: the correct fax number is 671-789-2503.

RESPONSE: OK.

23. §13.11 – Okay as amended by McCully, agreement construed under Guam law. However, venue for any action taken to enforce or interpret this agreement shall be brought in the Superior Court of Guam.

RESPONSE: OK.

I believe that covers most of it. I look forward to your response to these matters, and to moving ahead with this deal.

Thanks again for your courtesy and cooperation.

Sincerely,

Robert P. Kutz

## R P Kutz

| | |
|---|---|
| **From:** | "Weiner, Andrew J." <AWeiner@mofo.com> |
| **To:** | <rpklaw@ite.net> |
| **Cc:** | "Bruce P. Morrison" <bruce.p.morrison@db.com>; "McCully & Beggs, P.C." <mblaw@kuentos.guam.net> |
| **Sent:** | Wednesday, December 03, 2003 11:54 PM |
| **Attach:** | Andrew Weiner Memo.12-2-03.doc |
| **Subject:** | FW: reply to response |

I have reviewed your comments with Bruce Morrison. There is a threshold issue to deal with. Your client's original offer contemplated a closing within 15 days, well before the end of calendar 2003, and not contingent on third party consents. It was on this basis that my client elected to proceed to attempt to negotiate the transaction. Your response indicates that your client can no longer perform on that timetable or on that basis. It now is proposing a transaction which could extend well into calendar 2004, and which has a risk that it will not close due to Korean governmental action or inaction. These are material changes. I would ask you to reconsider them. Unless you can revert to your client's original offer as to the closing date and the absence of third party consents, my client will have to reconsider whether it is prepared to proceed with a sale of the Property to your client.

We look forward to your response.

-----Original Message-----
**From:** R P Kutz [mailto:rpklaw@ite.net]
**Sent:** December 02, 2003 6:18 AM
**To:** Weiner, Andrew J.
**Subject:** reply to response

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message. Thank you very much.