DUNCAN G. McCULLY, ESQ.
McCULLY & BEGGS, P.C.
Suite 200, 139 Murray Blvd.
Hagatna, Guam 96910
Tel: 671-477-7418
Fax: 671-472-1201
e-mail: mblaw@kuentos.guam.net

Attorneys for Defendant
BTC 97 SP, LLC

FILED
DISTRICT COURT OF GUAM
FEB 20 2004
MARY L. M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| GUAM TUMON COMPANY, LLC, a Guam limited liability company, JAE SEUNG PARK, an individual, CENTRAL MILLS SUPPLY, LTD., a Korean corporation, MICHAEL LEE, an individual dba Global Realty,<br><br>    Plaintiffs,<br><br>v.<br><br>BTC 97 SP, LLC, a Delaware limited liability company, DOES 1-10, real parties in interest,<br><br>    Defendants. | CIVIL CASE NO. 03-00043<br><br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION RE: SUMMARY JUDGMENT** |

ORIGINAL

## TABLE OF CONTENTS

|     |                                                                                                                                                                 | Page |
| --- | --------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---- |
| I.  | INTRODUCTION                                                                                                                                                    | 1    |
| II. | THE LETTERS OF NOVEMBER 19 AND 20, 2003 WERE INCONSISTENT AND DID NOT SET FORTH A COPMPLETE AGREEMENT                                                            | 2    |
|     | A. THE LETTERS PROPOSE DIFFERENT DATES AND A MUTUALLY ACCEPTABLE DATE WAS NEVER AGREED TO                                                                         | 2    |
|     | B. THE LETTERS REVEAL THAT NO AGREEMENT WAS REACHED FOR THE TITLE TO THE PROPERTY AND THE SUPPOSED AGREEMENT WOULD HAVE LACKED MUTUALITY                          | 4    |
|     | C. THE PARTIES NEVER AGREED ON THE TERMS FOR THE RELEASE OF THE APPRAISAL                                                                                        | 5    |
| III.| THE PARTIES DID NOT INTEND THE NOVEMBER 19 AND 20 LETTERS TO BE A FINAL AND BINDING AGREEMENT                                                                    | 7    |
| IV. | IF THE COURT DISMISSES MR. PARK AND MR. CHO'S CLAIMS IT SHOULD DISMISS MR. LEE'S                                                                                 | 9    |
| V.  | THE DEFENDANT HAS STANDING TO CHALLENGE THE IMPOSITION OF A CONSTRUCTIVE TRUST ON ITS PROPERTY                                                                   | 10   |

# TABLE OF AUTHORITIES

**CASES**                                                                                                                       **PAGE(S)**

*Teacher's Insurance and Annuity Association vs. Tribune*
    (S.D. N.Y., 1987) 670 F. Supp. 491, 497..........................................................1

*Apablasa vs. Merritt and Company*
    (1959) 176 Cal. App. 2d 719; 1 Cal. Rptr. 500, 505....................................3, 5

*Takano-Towa Guam Co. vs. Cox*
    (1993; District court of Guam, Appelate Division) 1993 WL 128214.........5, 7, 8, 9

*State Properties vs. Neal*
    (1945) 72 CA 2d 112, 164 p.2d 38...............................................................6

**MISCELLANEOUS**

58 Cal Jur 3d, "Specific Performance" §13 p.28..........................................................2

54 Cal Jur 3d, "Real Estate-Selected Topics" §5, p.48..................................................2

Vol. 1, Witkin, Summary of California Law 9th Ed, § 119, p.144....................................7

**STATUTES**

18 G.C.A. §85317..................................................................................................7

18 G.C.A. §85102..................................................................................................7

# I. INTRODUCTION

In order for Bruce Morrison's letter of November 19, 2003 and Jae Seung Park's letter of November 20, 2003 to have created an enforceable contract, the letters must have set forth a complete, precise and mutual agreement on all material terms and both parties must have intended the letters to result in an final and binding agreement. On their face, the letters are inconsistent, incomplete and not mutually binding. Similarly, until the Defendant/Seller broke off negotiations, neither party intended the letters to be in themselves a final and binding agreement. Both parties intended the subsequent execution of a written purchase agreement would be the necessary expression of their mutual consent. Until they filed this lawsuit, the Plaintiffs/Buyer never intended nor communicated that they or the Defendant were bound by the November 20, 2003 letter.

After the Seller exercised its right to terminate negotiations, the Buyer decided that earlier in negotiations material terms appeared to have been agreed to. A party cannot trap another into a surprise contractual obligation by reaching back into the course of negotiations and unilaterally declaring that a contract already exists. (See _Teacher's Insurance and Annuity Association vs. Tribune_. (S.D. N.Y., 1987) 670 F. Supp. 491, 497.

"Ordinarily in contract negotiations, enforceable legal rights do not arise until either the expression of mutual consent to be bound, or some equivalent event that marks the acceptance of offer." _Teacher's Insurance_ at 497.

It is sufficient to defeat the Plaintiff's claims that the Defendant never manifested the intention to be bound by Mr. Park's November 20 letter; the Defendant did not sign the letter or otherwise agree that a final agreement had been reached. The uncontroverted facts before the court establish that the parties did not intend the two letters relied on by the Plaintiffs to

create a final and enforceable contractual obligation to buy and sell the Property. As acknowledged by the Plaintiffs, it is appropriate to immediately resolve this case by summary judgment.

## II. THE LETTERS OF NOVEMBER 19 AND 20, 2003 WERE INCONSISTENT AND DID NOT SET FORTH A COMPLETE AGREEMENT

The Plaintiffs suggest that as of November 20, 2003, the parties had reached an agreement on all material terms necessary for the purchase and sale of the Property as set forth in Mr. Morrison's letter of November 19, 2003 and Mr. Park's response of November 20, 2003. A close review of the two letters reveals that they proposed different terms for material issues, those issues were never resolved and the supposed agreement was never binding on the Plaintiff and therefore lacked the required mutuality.

### A. THE LETTERS PROPOSE DIFFERENT CLOSING DATES AND A MUTUALLY ACCEPTABLE DATE WAS NEVER AGREED TO

In his November 19, 2003 letter (Exhibit 39), Mr. Morrison said that the sale "will close within 15 days" of the date of the letter – on or before December 4, 2004. Mr. Morrison also indicated that if closing would not occur by that date then the Seller would not be bound to the agreed price. Mr. Park responded by proposing that the sale not close until December 15, 2003 (Exhibit 43). Clearly, as of November 20, 2003 the parties had not agreed to a date for the Buyer to pay the purchase price.

It is well established that in order for a contract to be enforceable, the parties must have agreed upon the time for the payment of the price. (See 58 Cal Jur 3d, "Specific Performance" §13, p.28) Similarly, in order for a binding contract to exist, all the material terms must have been agreed to. (54 Cal Jur 3d, "Real Estate-Selected Topics", §5, p.48) In order for an alleged agreement to buy and sell property to be binding there must be a definite

Page 2 of 10

Case 1:03-cv-00043   Document 37   Filed 02/20/2004   Page 5 of 13

term for the payment of the price. Id at p.49.

Clearly, as of November 20, 2003 there was no meeting of the minds as to when the proposed sale would close and the Buyer would pay the purchase price. Additionally, if Mr. Morrison's letter of November 19, 2003 is considered an offer, then it was rejected by Mr. Park's letter of November 20, 2003. ("... terms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract".) Apablasa vs. Merritt and Company (1959) 176 Cal. App. 2d 719; 1 Cal. Rptr. 500, 505.

It is clear from a review of subsequent correspondence that the parties never reached an agreement on this material issue. Four days later, on November 24, 2003, the Seller, through its duly authorized representative, Attorney Andrew J. Weiner, proposed a closing sometime in December. (See Section 6.1 of the proposed Agreement of Sale; Exhibit 47. The exact day in December was left open for discussion). On November 28, Mr. Kutz responded that the Buyers would not commit to any specific date sooner than thirty (30) days after the appraisal was delivered to the appropriate banking and governmental agencies in Korea (See Section 6.1 of Exhibit 51). After Mr. Weiner pointed out that this was a material change to the proposals of November 19 and 20 (See Mr. Weiner's e-mail of December 1; Exhibit 52), Mr. Kutz pushed the closing further back to 80 days after the Seller's delivery of the appraisal (See Section 5 of Exhibit 53). Ultimately it was this open issue which caused the Seller to terminate negotiations (See Mr. Morrison's letter of December 9, 2003; Exhibit 57 and paragraph 40 of Mr. Morrison's Declaration). Clearly, neither as of November 20, 2003 – nor at any subsequent time – did the parties reach an agreement on the time for closing. For this reason alone no binding and enforceable contract was ever entered into and summary judgment dismissing the complaint should be granted.

It should be noted that in the Plaintiff's Memorandum of Points and Authorities ("Plaintiffs' Memorandum") counsel for the Plaintiff makes several misstatements about the time for closing set forth in the November letters. At paragraphs 15, 32, 52 and 66 counsel wrongly states that the letters set forth an agreement to close within 15 days following the opening of escrow. This is a fabrication. Exhibits 39 and 43 propose a closing within "15 days" and "December 15" not "15 days following opening of escrow" (Plaintiff's Memorandum at paragraph 15).

### B. THE LETTERS REVEAL THAT NO AGREEMENT WAS REACHED FOR THE TITLE TO THE PROPERTY AND THE SUPPOSED AGREEMENT WOULD HAVE LACKED MUTUALITY

In addition to the time for closing, the letters of November 19 and 20 did not reach an agreement for the condition and quality of the title to the Property. In his letter, Mr. Park said that the condition of title would be as addressed in Mr. Kutz's earlier letters (See Exhibit 43). Mr. Kutz had referred to Pacific American Title Insurance OER-08-2014651A as setting forth acceptable title. The Plaintiffs now argue that in the supposed contract the condition of the title was agreed to be "clear and insurable" (See paragraphs 52 and 66 of Plaintiff's Memorandum). What is "insurable"? Any title can be insured if the Buyer accepts a title policy with numerous exceptions for liens and encumbrances.

Mr. Morrison raised this issue in his letter of November 19, 2003 (Exhibit 39). He pointed out that he had not yet seen the PATICO OER-08-2014651A. Since he had not seen it, he could not agree to the condition that the title would have no exceptions other than as set forth in that OER. Clearly, as of November 20 it was not possible for the parties to have reached an agreement as to the material issue of the condition of the title.

This open issue is significant as the Property proved to be burdened with two encumbrances not shown on OER-08-2014651A – the encroachment of a fence into an adjoining lot and the pending foreclosure of a small sliver of the Property and the resulting right of redemption. The Plaintiffs subsequently declined to accept these encumbrances, as was proposed by the Seller (See Sections 4.2.1 and 41.6 of Exhibit 50 and paragraphs 4 and 10 of Exhibit 51). Although in the Plaintiffs' Memorandum, the Plaintiffs offer to accept these encroachments, they were unwilling to do so while the parties were negotiating. Had the Defendant attempted to enforce Mr. Park's November 20 letter against him, he could have asserted this title issue as valid defense. Clearly, the supposed November 20, 2003 agreement was not mutually binding and therefore not a valid contract. Both mutuality and the Plaintiffs attempt to waive terms not previously agreed to where addressed by the Appellate Division of this Court in <u>Takano-Towa Guam Co. vs. Cox</u> (1993; District Court of Guam, Appellate Division) 1993 WL 128214. Another fact preventing the mutual enforcement of the November 20 letter is that it was not signed by Mr. Cho and therefore not binding on him.

### C. THE PARTIES NEVER AGREED ON THE TERMS FOR THE RELEASE OF THE APPRAISAL

In his response to Mr. Morrison's November 19, 2003 letter (Exhibit 43), Mr. Park proposed "one change". He requested the Sellers provide Mr. Cho in Korea with a copy of the appraisal before the closing. No agreement was ever reached on this issue and its proposal by Mr. Park prevented his November 20 letter from being an acceptance of any previous offer. <u>Apablasa</u>, <u>Supra</u>.

The release of the appraisal was essential to the Plaintiff's performance of the transaction. "Without an appraisal, there could be no deal on any terms, new or old, because the money

could not be released from Korea, and the Buyers could not perform." (Plaintiffs' Memorandum at Page 11, Lines 19-21.) Nonetheless, it is uncontroverted that as of November 20 – or any later date – the parties had not agreed on this essential term. Since this essential term was not agreed to, no contract was ever formed. Preliminary written agreements which leave material terms undecided cannot result in enforceable contracts. <u>State Properties vs. Neal</u> (1945) 72 CA 2d 112, 164 p.2d 38.

In the Plaintiff's Memorandum they argue that the Seller acted improperly or in bad faith when it declined to release the appraisal until a formal written agreement was entered into. The Plaintiffs are not correct. The Seller had every right to agree or not agree to the Buyer's demand for its appraisal. It consistently told the Buyers that it would only release the appraisal when an enforceable and complete contract was entered into (See Mr. Morrison's letters of November 14 and 25; Exhibits 36 and 49). In his Declaration Mr. Morrison explained that he did not want the appraisal to raise new issues or to be circulated among other potential buyers if Mr. Park and Mr. Cho did not buy the Property (See Mr. Morrison's Declaration at paragraph 34). The Plaintiff's argument that Mr. Morrison was trying to leverage them into agreeing to the Seller's terms in the proposed purchase agreement is absurd. If the Buyer's did not agree with those proposed terms, they could simply have declined to enter into the purchase agreement and demanded to close on the strength of the supposed November 20 agreement. However, because that supposed agreement did not require the Seller to release its appraisal, it was fundamentally incomplete for the Buyer's purposes.

The release of the appraisal was an essential component of this transaction. The fact that the parties did not reach an agreement for its release conclusively establishes that they did not

enter into an enforceable agreement. This fact alone is sufficient for the court to dismiss the Plaintiff's complaint.

### III. THE PARTIES DID NOT INTEND THE NOVEMBER 19 AND 20 LETTERS TO BE A FINAL AND BINDING AGREEMENT

The question of whether the party's exchange of correspondence formed a binding contract is determined by looking to the intent of the parties (18 G.C.A. §85102; Takano-Towa, Supra at *5). The intention of the parties is determined by the outward manifestation or expressions of assent, determined from the reasonable meaning of the parties words and acts and not from their subjective state of mind. (18 G.C.A. § 85317; Vol. 1, Witkin, Summary of California Law 9th Ed, § 119, p.144).

Although the Plaintiff's memoranda acknowledges this well established rule, the Declarations of Mr. Park and Mr. Cho are replete with statements setting forth their subjective belief that the letters of November 19 and 20 resulted in a binding contract and their belief that the proposed Agreement of Sale was some kind of superfluous addendum which they only responded to as a courtesy. The court should disregard these statements and the arguments based on them.

The court should determine if the parties intended the November 19 and 20 letters to be a final, binding and complete contract by looking to the following:

1. At no time did Mr. Park or Mr. Cho tell Mr. Morrison – and at no time did Mr. Kutz tell Mr. Weiner – that they considered the letters of November 19 and 20 to be a final, binding and complete agreement. The closest statement is in Mr. Park's letter of November 20, 2003 (Exhibit 43) where he confirms his and Mr. Cho's "irrevocable commitment...to

purchase the Tumon Village Apartment for a cash price of $3,650,000." Mr. Park does not say the parties have entered into a final or "irrevocable" agreement. It is simply Mr. Park's unilateral expression of intent to pay $3,650,000 for the Property. He is speaking only for himself. The letter was not signed by Mr. Cho and was not "agreed to and accepted" by Mr. Morrison.

2. Throughout the negotiations the parties intended to prepare and execute a written agreement which would include new terms and terms still under discussion. Mr. Park's November 20 letter states that his attorney will work with the Seller's attorney to resolve those issues and to "complete the sale documentation" (Exhibit 43). Clearly, Mr. Park anticipated signing a written agreement which resolved the open issues.

Mr. Morrison repeatedly indicated that a written contract would be prepared and signed. Despite the Buyer's numerous demands, he refused to release the Seller's appraisal until a final written agreement was entered into. Clearly, Mr. Morrison did not believe that the letters of November 19 and 20 created any kind of final or binding agreement. Mr. Morrison expressly communicated that the Seller's manifestation of assent would take the form of a comprehensive written contract. "Where there parties intend to reduce their agreement to writing, there is no contract until the writing is signed." (*Takano-Towa*, Supra, at *6.)

3. After November 20, 2003 the parties jointly participated in extensive negotiations of new and supposedly agreed upon terms. Clearly, neither party believed that a final and binding agreement had already been entered into. The fact that the Plaintiffs proposed radically different terms to those which had supposedly been fixed by the November 20 "agreement" is irreconcilable with the Plaintiff's position in this case. Either the Plaintiffs intended November

20 "agreement" to be final or they did not. If the Plaintiffs intended it to be final, then how could they possibly change the time for closing from "December 15" (Exhibit 43) to an "80 working day escrow" (Paragraph 5 of Exhibit 53)? Clearly, neither party intended the November 19 and 20 letters to be a final agreement.

4. The existence of open terms is evidence that neither party intended the November correspondence to be a final agreement. The open and unresolved terms included the following: the time for closing, the amount of the deposit, the escrow holder, the condition of the title, the proration and assumption of back rents, a pre-closing survey and the release of the appraisal. The fact that on November 20 the parties intended to resolve all of these open issues, clearly shows that the parties had only agreed to make an agreement sometime in the future. An agreement to agree is not an enforceable contract. (See *Takano-Towa,* Supra at*6).

## IV. IF THE COURT DISMISSES MR. PARK AND MR. CHO'S CLAIMS IT SHOULD DISMISS MR. LEE'S

In their separate Opposition to Defendant's Motion for Summary Judgment, the Plaintiffs suggest that Defendant's motion for summary judgment does not address Michael Lee's claim for breach of contract. This is not correct. In the third cause of action in the Plaintiff's complaint, Mr. Lee claims the status of a third party beneficiary of the supposed contract between Mr. Park and the Defendant. The complaint alleges that the Defendant's breach of that contract resulted in an anticipatory breach of the Defendants obligation to pay a commission to Mr. Lee.

Simply stated, under the theory pled, if the Defendant did not breach a contract with Mr. Park, because no contract was entered into, then it cannot be held liable to Mr. Lee as a third

party beneficiary. In other words, if the court finds that there was no contract for Mr. Lee to be the third party beneficiary of, then the third cause of action should be dismissed.

## V. THE DEFENDANT HAS STANDING TO CHALLENGE THE IMPOSITION OF A CONSTRUCTIVE TRUST ON ITS PROPERTY

In their opposition, the Plaintiffs take the absurd position that the Defendant does not have standing to challenge the request that its property be part a constructive trust. The Defendant owns the Property and has the absolute right to transfer it to third parties. The Plaintiff is asking the court to prevent the Defendant from selling its Property. Of course the Defendant has standing to challenge a requested restriction on its power deal with its own Property.

If the court finds that there was no enforceable contract between the Plaintiffs and Defendants, then the Plaintiffs requested remedy of a constructive trust will be moot. If the court finds that issues of fact prevent such a ruling, then the court should still dismiss the Plaintiffs claim that a constructive trust be imposed. There is no legal basis for the trust, yet it will effect the Defendants property. The court should not allow the Plaintiffs to continue to interfere with the Defendant's property rights, when they have no legal basis for doing so. The court should declare the lis pendens void.

McCULLY & BEGGS, P.C.
Attorneys for the Defendant
BTC 97 SP, LLC

By: _____
DUNCAN G. McCULLY

Dated: 2/20/04